UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**,

    v.                                        Case No. 8:24-CR-00200-WFJ-LSG-8

**BOB TURNER, IV**,

    Defendant.
_____/

**ORDER**
**GRANTING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Bob Turner, IV's Motion to Suppress Pre-*Miranda* and Post-*Miranda* Incriminating Statements. Dkt. 223. The Government filed a response, Dkt. 239, and a supplement, Dkt. 314. The Court held a hearing on the matter. Dkt. 286. The entire subject of the motion is an interview captured on videotape, which can be found in Government Exhibit 1 for the hearing. Dkt. 278 Ex. 1) (DVD provided to the Clerk's office).

Upon review of the videotape and after considering the record, the Court finds that Mr. Turner invoked his right to be silent and not to answer questions. This happened about thirty minutes after the interview began, prior to *Miranda*, but the invocation was repeated thereafter. His right to remain silent was not scrupulously honored. Only after invoking the right to silence did Defendant make incriminating statements that the Government seeks to admit.

1

## BACKGROUND

On June 11, 2024, a grand jury indicted Mr. Turner and eight co-defendants with drug trafficking and firearm offenses. Dkt. 92. He is charged with one count of conspiracy to distribute 500 grams or more of methamphetamine and one count of distribution of 50 grams or more of a mixture containing a detectable amount of methamphetamine. *Id.* Mr. Turner was later arrested at his residence. *Id.* at 4–5.

As discussed previously, the entire interview was captured on audio and visual recording. *See* Dkt. 278 Ex. 1. The tape opens with Mr. Turner sitting at an interview table, in a small interview room at the Sheriff's office. *Id.* He is handcuffed behind his back. *Id.* He remains in this position during the entire two hours of the interview. *Id.* In the first eight minutes, he is alone. *Id.* at 00:00–08:20. He is clearly in custody.

After the Sheriff's Deputy and the DEA Special Agent ("Officers") arrive in the room, they ask, "How are you doing?" and introduce themselves. *Id.* at 08:20–39. They open by telling Defendant he has been federally indicted, in relation to a confidential buy, and informed him that they are there to see if he "wants to try to help himself, by talking, [and] giving [them] some information" because "his criminal history is pretty bad." *Id.* at 08:40–09:29.

The Officers initially spent forty minutes talking to Defendant, questioning whether he wanted to be *Mirandized* and cooperate. *Id.* at 08:22–48:18. Defendant pushed back, saying in essence, "What's in it for me?" and demanding some

2

guaranteed result for any cooperation. *E.g.*, *id.* at 11:11–25, 15:44–16:04, 26:00–29. He expresses concern for his safety and that of his family. *E.g.*, *id.* at 17:29–41, 21:04–13. There are periods of silence when Defendant just sits there. *E.g.*, *id.* at 23:53–24:17. He mumbles responses, *e.g.*, *id.* at 14:19–42, and mainly has his head bowed, *e.g.*, *id.* at 23:53–24:17. He bargains, *e.g.*, *id.* at 32:44–33:02, and expresses knowledge of how the system works, *e.g.*, *id.* at 16:15–39, 20:50–21:14. Both officers speak to him, expressing that cooperating is in his best interest. *E.g., id.* at 33:19–26. There are long pauses when Defendant says nothing. *E.g.*, *id.* at 34:37–35:16.

The Officers also told him he would be going to the U.S. Marshal's office and then to the Pinellas County Jail. *Id.* at 23:47–51. Defendant states something like "I ain't goin' to do it," and again demands some guarantee. *Id.* at 30:08–31:02. The Officer asks, "Do you want to play ball for Team America?" *Id.* at 33:27–34. Defendant states that he needs time to think about it. *Id.* 35:36–45. This is repeated several times. *E.g.*, *id.* at 54:16–20, 1:06:05–08.

Finally, half an hour into the interview, the Officer asks, "Do you want to play ball for Team America or take a ride to jail?" *Id.* at 41:44–52. Defendant responds, "No, I'll take that ride." *Id.* at 41:52–55. This was, fairly viewed, an invocation of the right to silence. After Defendant says this, the officer cajoles him to speak for about a minute while Defendant remains silent. *Id.* at 41:55–42:50. After the cajoling

3

stops, there are eighteen seconds of silence, *id.* at 42:50–42:07, and then Defendant says, "It's crazy." *Id.* at 43:07–08. The Officer responds, "It is crazy," and continues to urge him to cooperate. *Id.* at 43:09–50. After several minutes, Defendant then appears to start to relent, *id.* at 43:49–54, and a few more minutes later, he identifies his source as co-defendant, "Jit," *id.* at 46:20–30.

Now halfway through the interview, the Officers, for the first time, give Defendant a *Miranda* warning accurately off a card. *Id.* at 48:18–35. After the warnings, Defendant remains reluctant, including wondering if he needs his lawyer present, expressing fear, and stating that he needs time to think about cooperating. *E.g.*, *id.* at 48:38–43, 50:48–51:12. Defendant says, "Wherever you going to take me, I'm scared . . . take me to Pinellas." *Id.* at 51:45–52:14. This is the somewhat inarticulate Defendant stating to take him to jail and cease the interview.

The Officer notes that Defendant said, "Take me to jail." *Id.* at 55:03–08. Concerning taking him to jail, the Officer asks, "Do you want to take the ride . . . take the time?" Defendant says softly, "I think so." *Id.* at 56:00–06. Again, Defendant evinces a desire to stop the interview. The interview continued. *Id.* at 56:24. Defendant slowly started identifying his sources for narcotics. *E.g.*, *id.* at 1:01:47–1:02:39. His cooperation (and extensive self-incrimination) becomes free-flowing at about 1:12:35 in the videotape.

4

## LEGAL STANDARD

The Fifth Amendment right against compelled self-incrimination requires a warning to a subject in custody that he has the right to remain silent and the right to the presence of an attorney before any interrogation. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). If the subject invokes their right to remain silent, "the interrogation must cease." *Id.* at 474. Waivers must be knowing, voluntary, and intelligent. *Edwards v. Arizona*, 451 U.S. 477 (1981).

On a motion to suppress alleging violation of a subject's *Miranda* rights, the movant bears the initial burden of proving that he was in custody and subject to a custodial interrogation. *See United States v. Acosta*, 363 F.3d 1141, 1148 (11th Cir. 2004). The Government bears the burden of proving a knowing, voluntary, and intelligent waiver. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *Sigouin*, 494 F. Supp. 3d at 1261. The evidentiary burden at a suppression hearing is a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## DISCUSSION

Defendant properly notes that all the statements following his arrest were made in police custody and under interrogation. Dkt. 223 at 2, 5. Defendant continues that he invoked his right to remain silent. *Id.* at 2, 4. Therefore, he concludes, any statements before and after *Miranda* should be suppressed. *Id.* at 5.

5

The Government does not seek to admit statements before the *Miranda* warning. Dkt. 239 at 5 n.1; Dkt. 314 at 3 n.1. Therefore, the only contested period in the interview videotape is the period after *Miranda*, from 48:35 to 2:07:54. Dkt. 278 Ex. 1. However, the Government does contest that Defendant was subject to custodial interrogation at all times on the tape. Dkt. 314 at 7.

The Supreme Court in *Rhode Island v. Innis*, 446 U.S. 291 (1980), explained the meaning of the term "interrogation":

> *Miranda* safeguards come into play whenever a person in *custody* is subjected to either express questioning or its functional equivalent. That is to say, the term "*interrogation*" under *Miranda* refers not only to the express questioning, but also to *any words or actions* on the part of the police (other than those normally attendant to arrest and custody) *that the police should know are reasonably likely to elicit an incriminating response* from the suspect.

*Id.* at 300–01 (emphasis added). The Officers should have known that their invitation to Defendant to "try to help [him]self, by talking, [and] giving [them] some information," and the threat of the weight of his criminal history, was reasonably likely to elicit an incriminating response. Dkt. 278 Ex. 1 at 08:40–09:29. Moreover, Defendant was handcuffed in an interview room at a police station, being interviewed at an interview table by Officers. *Id.* These facts are the hallmarks of a custodial interrogation. *See United States v. Woodson*, 30 F.4th 1295, 1303 (11th Cir. 2022). The entirety of this videotaped interview qualifies as an interrogation under *Miranda*. *See id.*; Dkt. 278 Ex. 1. Because the Officers failed to *Mirandize*

6

Defendant at the start of the interrogation, all statements made before the *Miranda* warning are inadmissible and suppressed.

Next, the Court considers whether Defendant properly invoked his rights. The Supreme Court requires that the invocation of rights be "unequivocal." *Davis v. United States*, 512 U.S. 452, 459 (1994). "Although a suspect need not speak with the discrimination of an Oxford don, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney," or to remain silent. *Coleman v. Singletary*, 30 F.3d 1420, 1424 (1994); *see also Owen v. Fla. Dep't of Corr.*, 686 F.3d 1181, 1194 (11th Cir. 2012) ("Owen's two statements about not wanting to 'talk about it' . . . made nearly 30 minutes apart, in response to questions about very specific details . . . did not constitute an *unequivocal* invocation . . . ."); *United States v. Mikell*, 102 F.3d 470, 477 (11th Cir. 1996) ("[A] suspect's refusal to answer certain questions is not tantamount to the invocation . . . .").

Here, Defendant initially appears to be close to invoking his right to silence around the thirty-minute mark, stating "I ain't goin' to do it," the "it" meaning incriminating information. Dkt. 278 Ex. 1 at 30:08–31:02. Later, between 41:44 and 41:55, the Officer says, "Do you want to play ball for Team America or take a ride to jail?" And Defendant responds, "No, I'll take that ride [to jail]." *Id.* at 41:44–55. The fairest interpretation of this episode is that Defendant invoked his right to

silence. Viewing the statements in context as a reasonable officer, Defendant is communicating that he is unwilling to talk and wants to go to jail instead of sitting there and cooperating. At that point, the questioning should have ceased. Afterwards, however, the Officers cajole Defendant, even after he says, "It's crazy." *Id.* at 41:55–43:50. The Court concludes that Defendant indicated he did not wish to speak to the Officers in the interrogation. Yet they continued interrogating him. *Id.* at 43:50–46:30.

The Government argues that these statements pre-*Miranda* were not a valid invocation of the right to silence under *United States v. Grimes*, 142 F.3d 1342, 1348 (11th Cir. 1998), because they were not contemporaneous with interrogation. Dkt. 314 at 8. *Grimes* involved a "co-defendant and cellmate relay[ing] the defendant's inculpatory statements to the police," which the Court held was not the coercive interrogation situation *Miranda* was designed to protect against. 142 F.3d at 1349. The instant case is distinguishable since officers directly subjected Defendant to a custodial interrogation.

Regardless, Defendant properly invoked his rights post-*Miranda*. After *Miranda*, from 51:45 to 52:14, Defendant says, "Wherever you're going to take me, I'm scared . . . take me to Pinellas." *Id.* at 51:45–52:14. Fairly viewed, this invokes a desire to cease questioning, repeating a request previously made. This is not the clearest record, and Defendant does not offer an invocation in Oxfordian English.

8

However, it does appear to a reasonable officer that he did so based on the entire context in which the invocation was made.

Defendant also argues that he invoked his right to counsel. Dkt. 223 ¶ 4. However, Defendant only asked if he needed his attorney to be present, Dkt. 278 Ex. 1 at 48:38–43, which is not sufficient. *See Towne v. Dugger*, 899 F.2d 1104, 1107–08 (11th Cir. 1990) (holding that a defendant's posing "officer, what do you think about whether I should get a lawyer?" was equivocal and therefore insufficient), *abrogated on other grounds by Davis v. United States*, 512 U.S. 452 (1994), *as recognized in United States v. Thomas*, 521 F. App'x 878, 882 (11th Cir. 2013).

The final issue is whether Defendant waived his rights by reinstating interrogation. "[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends . . . on whether his [rights] w[ere] 'scrupulously honored.'" *Michigan v. Mosley*, 423 U.S. 96, 104 (1975) (citations omitted). The Eleventh Circuit requires that, "at minimum, . . . the government refrain from questioning a suspect unless he both (1) initiates further conversation; and (2) waives the previously asserted right . . . ." *United States v. Muhammad*, 194 F. App'x 882, 885 (11th Cir. 2006) (citations omitted). Here, Defendant did not re-initiate after invoking his rights; the Officers did. The Court finds no waiver because the Officers did not scrupulously honor Defendant's invocation of his right to remain silent.

9

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendant's motion to suppress, Dkt. 223, is **GRANTED**, and the interview is suppressed.

**DONE AND ORDERED** at Tampa, Florida, on April 28, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record